**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     PLAINTIFF, | : | |
| | : | |
| v. | : | CASE NO. 1:22-cr-00079-JJM |
| | : | |
| SARAH CAVANAUGH | : | |
|     DEFENDANT, | : | |

## DEFENDANT SARAH CAVANAUGH'S SENTENCING MEMORANDUM

Comes now, Sarah Cavanaugh, by and through counsel, submits this sentencing memorandum in support of her request for a sentence of incarceration of twenty-four months (24) and a day. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). For the reasons set forth below, Ms. Cavanaugh submits that the requested sentence conforms to this standard and we respectfully request that this Court sentence her accordingly.

## INTRODUCTION

Sarah Cavanaugh committed a crime. Sarah committed multiple crimes. Regrettably, at the time she committed these crimes, Sarah did not fully appreciate the seriousness of the crimes she committed or how her actions would hurt the people she cared for, those who care for her, or the public at large.

While the overall theme of this case can be described as greed, it is a label which does not exactly fit Sarah Cavanaugh [hereinafter, "Ms. Cavanaugh"]. Ms. Cavanaugh did not commit these crimes with malice in her heart or purely for economic benefit. This case and the actions that Ms. Cavanaugh undertook are much more nuanced than what it appears at first glance.

Ms. Cavanaugh, who has had severe trauma during her formative years in high school, beat the odds and graduated with an advanced degree in Sociology. Following graduation from college Ms. Cavanaugh began working as a social worker with the Veterans Affairs Medical Facility in Rhode Island to help others who too had suffered from trauma. Sadly, Ms. Cavanaugh inexplicably created a persona of that of a Marine Veteran and traveled down a destructive path in which she

1

has ultimately caused deep pain and trauma to the very people that she had dedicated her life to help.

This case has understandably garnered much attention and Ms. Cavanaugh's actions have brought her to viral notoriety, for which she will never be able to fully overcome, but at its core this case is about a troubled woman who committed fraud while wholly underappreciating the hurt that her actions have caused.

Ms. Cavanaugh's case presents a troubling set of circumstances that as the Government puts it "shocks the conscience", but also one that justifies a sentence outside the sentencing guidelines and where incarceration in BOP is warranted, but a term of incarceration that is sufficient, but not greater than necessary. She is a loving daughter, who outside the home had dedicated herself to obtaining an education and embarking on a career to help the lives of Veterans, yet she now finds herself before this Court awaiting sentencing and the collateral consequences for a fraudulent scheme in which she fully takes responsibility for her actions.

It is understandable the anger and pain that the case elicits, but the exceptionality of Ms. Cavanaugh is compelling. Which is why, considering her prior history, her dedication to public service, her contrition, and her resolution for atonement, a sentence of 24 months and a day incarceration would best serve the interests of justice in this case. Ms. Cavanaugh is neither a danger to the community nor does she pose a significant chance of re-offending, accordingly, this a sentence below the advisory Guidelines is appropriate. Moreover, defense counsel submits that the request for sentencing set forth herein are sufficient and not greater than necessary when compared to recently decided cases concerning similarly situated defendants.

## I.   FACTUAL BACKGROUND

Ms. Cavanaugh was born and raised in Warwick, Rhode Island, and attended primary school in East Greenwich and North Kingston. As the pre-sentence report ("PSR") reflects, she grew up in a household marked by unspeakable violence and for reasons that are obvious to the Court, defense counsel will refrain from further details in this memorandum. Against all odds, however, Ms. Cavanaugh attended college and graduated with a degree in Political Science. Following graduation from Rhode Island College, she decided to obtain a master's degree in Sociology, a field that interested her and a desire to help others in need, given the trauma that she had experienced as a child.

With the same strong work ethic and perseverance that helped her survive the trauma from her childhood, Ms. Cavanaugh applied to and was accepted into Boston College Graduate Degree Program for Sociology. While studying for her graduate degree, she worked as an intern with the Veterans Affairs Medical Facility ("VA Hospital"), where she garnered the respect for her dedication to her work and to the people she serviced. Ms. Cavanaugh ultimately obtained a degree in Macro Social Work from Boston College in 2015 and shortly thereafter she received a full-time position as a social worker (case manager) with the VA Hospital in Providence, Rhode Island.

Naturally an introvert and uncomfortable in certain social settings, Ms. Cavanaugh began to develop a sort of connection with the Veterans that she cared for. This connection stemmed from the trauma that was reported to her by the Veterans and her own specific trauma. This connection was realized by Veterans who initially believed she was a Veteran, which she did not dispel, but instead she began to fabricate the idea that she was in fact a Marine.

Realizing the acceptance of the Veterans that she came to meet and know with their combined (albeit different) form of trauma, Ms. Cavanaugh began to adopt and assimilate the persona of a Marine Veteran and began to attend veteran activities throughout Rhode Island. The fabricated stories that she told to actual Veterans and civilians brought attention and economic donations to the very Veterans that needed services, but it was all predicated on a lie that took on a life of its own and spiraled out of control. Because of her deceit, Ms. Cavanaugh received economic benefits and services that she was not deserving of, and the shame and remorse that she feels for her actions is incalculable.

After Ms. Cavanaugh's arrest, she voluntarily resigned from her position from the VA Hospital in disgrace. Her spouse filed for divorce. Her spouse filed for divorce. She has received numerous death threats which were reported to US Probation and apparently unsympathetic local law enforcement departments. She also relinquished her social worker's license in the State of Rhode Island. Despite all of this, determined to make amends and to make restitution to the victims, she applied to and received positions at dozens of employers within Rhode Island and Massachusetts, only to be terminated shortly after reporting to work due to the notoriety of this case. Additionally, following the filing of a divorce petition by Ms. Cavanaugh's spouse, Ms. Cavanaugh placed her home on the market so that the proceeds would be available for restitution purposes.

## II. PROCEDURAL BACKGROUND

On August 9, 2022, Ms. Cavanaugh pled guilty to one count of Wire Fraud, 18 U.S.C. § 1343, one count of Aggravated Identity Theft, 18 U.S.C. § 1028A, one count of Forged Military Discharge Certificates, U.S.C. § 498, and one count of Fraudulent Use of Military Medals, 18 U.S.C. § 704(b). Each of which are non-violent crimes, but crimes, nonetheless. The total fraud loss perpetrated by Ms. Cavanaugh amounted to $294, 385.75.

Ms. Cavanaugh entered into a plea agreement with the US Government whereby she accepted responsibility for the above-referenced offenses and has agreed to pay restitution to the victims for the ill-gotten gains. Ms. Cavanaugh is now set for sentencing on March 14, 2023, before this Court.

In anticipation of sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). In the PSR, the probation office calculated a total offense level of 23 and a criminal history category of I, with an advisory sentencing range under the Guidelines of 46 to 57 months, plus 24 months consecutive for Count 2. (PSR at ¶ 135). There are no objections to the PSR by Ms. Cavanaugh.

While there are no objections to the PSR, defense counsel submits that the unique facts of this case, when applied to the sentencing factors outlined in 18 U.S.C. § 3553(a), warrant a sentence of 24 months incarceration.

## III. SENTENCING DISCUSSION

### A. Relevant Law

As this Court is well aware, in *United States v. Booker*, the United States Supreme Court struck down the provisions of the Federal Sentencing Act that made the federal sentencing guidelines mandatory. 543 U.S. 220, 250-60 (2005). "The statute, as modified by Booker, contains an overarching provision instructing courts to impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal citation omitted). These purposes include sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other corrective treatment. 18 U.S.C. § 3553(a)(2).

Furthermore, the Court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). Consequently, for "the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offenses together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937).

Each of these factors indicates the need to grant a variance from the advisory sentencing guideline range and for the Court to impose a sentence of 24 months incarceration where Ms. Cavanaugh, will also feel the effects of a federal felony conviction much less the collateral consequences resulting in the end of her professional career as a social worker and the infamy that will follow her for the rest of her life.

### B. The 18 U.S.C. § 3553(a) Factors Warrant a Sentence of 24 Months Incarceration

Although a court begins its sentencing determination by considering the Sentencing Guidelines, "[t]he Guidelines are only *not mandatory* on sentencing courts; they are also *not to be presumed reasonable*." *Nelson v. United States*, 555 U.S. 350, 352 (2009) emphasis added (per curiam). "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Id*. Accordingly, each of the relevant factors identified in 18 U.S.C. § 3553(a) include: (1) the nature and circumstance of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed, (3) the kinds of sentences available, (4) the Sentencing Guidelines, (5) the Guidelines' policy statements (6) disparity with similar offenders, and (7) the need to provide restitution to the victims of the offense.

#### (i) The Nature and Circumstances of the Offense

The Final Presentence Investigation Report ("PSR") provides an explanation of the

offenses and Ms. Cavanaugh does not contest the findings within the PSR.  Without limiting Ms. Cavanaugh's full acceptance of responsibility in any way, she clearly defrauded others by pretending to be a disabled Marine, she used her position and access to records to further her scheme, and she received economic benefit as a direct result of her fraud.  All of this is true and she has admitted to the fraud.  The offenses are, however, non-violent crimes and the fraudulently obtained benefits is over $250,000, which is not a small amount, but it is relatively less than the types of fraud loss typically before the Court.  Moreover, she has taken steps to set aside a portion of the proceeds from the sale of her home (roughly $82,000.00) to make restitution to the victims of the fraudulent scheme.

It is evident that the actions and the deceit that Ms. Cavanaugh took has hurt those that trusted her, and it is offensive to the average citizen, but in particular to actual Veterans.  The Court, the US Attorney Generals' Office and defense counsel have all received letters from Veterans who rightfully are upset by the actions of Ms. Cavanaugh.  Ms. Cavanaugh surely takes this to heart and as mentioned before, her grief over her actions and the people she hurt cannot be overstated.

Ms. Cavanaugh did not set out to defraud others for economic benefit or to cause this pain that she has caused.  Conversely, she overcame her own personal trauma to help others suffering from trauma, but in the end she failed miserably.  She situation is markedly different than most of the "fraudsters" who appear before the Court.  She admittedly used the pretense of being a disabled Marine for purely financial gain, but instead it was a combination of a feeling of wanting to connect with a community of Veterans who thought of her as one of them, which spiraled into something that she could not extricate herself from.

Ultimately, Ms. Cavanaugh deeply regrets her actions, understands the pain she has caused, and is hopeful to use this difficult time for self-improvement and to find a way in which she can some day soon redeem herself in the eyes of her family and friends.  Thus, taken together, the nature and circumstances of Ms. Cavanaugh's actions justify a term of 24 months incarceration.

### (ii)  Ms. Cavanaugh's History and Characteristics

As the PSR notes, prior to this case, Ms. Cavanaugh has no criminal history. The trauma that she suffered as a teenager is real and is verified in detail by the accompanied letters that were filed under seal. The Government's assertion that it is somehow made up is grotesque.

An introvert by nature, she dedicated herself to helping others and putting her past trauma behind her. Now a convicted felon, she remains steadfast in trying to re-purpose herself to become a better person and to pay back the restitution to the victims she defrauded. She has faced the music so to speak and has continued to apply to various employers rather than simply give up. This is worth noting given the notoriety and shame that this case has brought forward.

The letters of support by persons who know Ms. Cavanaugh, including victims of her fraudulent scheme, all acknowledge that while they are shocked by her fraud, they know that she is not the monster that she is being portrayed to be. One example gives details of how Ms. Cavanaugh met a disabled Marine Corp Veteran from North Kingstown who was wheelchair bound, unable to communicate verbally, and suffered from Parkinson's disease. Ms. Cavanaugh got to know this Veteran, who was once an avid runner, and she took it upon herself to rent him a race wheelchair and push him in a local 5k race for several years until his passing. This is a small example but there are others like it from people who know the type of heart that Ms. Cavanaugh has.

### (iii) The Need for the Sentence Imposed

Section 3553(a) instructs the Court to consider the need for the sentence imposed and to evaluate whether a guideline sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public from further crimes, and provides the defendant with the needed educational or vocational training, medical care, and other correctional treatment in an effective manner. *See* 18 U.S.C. § 3553(a)(2). In this case, these factors weigh in favor of a sentence of home confinement.

In this case, a Guidelines sentence is not required to deter others like Ms. Cavanaugh. A sentence of 24 months incarceration – a significant restriction on Ms. Cavanaugh's liberty – would achieve the goal of deterrence because the facts here are unusual and there are very few, if any, similarly situated defendants. Moreover, the publicity and viral notoriety of this case combined with 24 months incarceration is sufficient to deter others from a similar crime. In fact, the news of Ms. Cavanaugh's conviction has gained significant media attention, leading to Rhode Island

passing legislation against "stealing valor." This action demonstrates to the public at large that fraud of this sort and similarly situated defendants will be prosecuted to the full extent of the law – deterring any would-be offenders from participating in a similar scheme.

To be sure, Ms. Cavanaugh has already paid a significant price for her conduct, and the prospect of incarceration is a certainty. She will never be able to work in a career field in which she devoted years of schooling to achieve, her standing in the community has been stripped, and her ability to obtain virtually any kind of employment has been diminished. These penalties are not insignificant and should sufficiently deter other similarly situated defendants.

### (iv) The Kinds of Sentences Available

Congress has stated that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub L. No 98-473 § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

Neither counsel nor Ms. Cavanaugh seek in any way to diminish the gravity of the instant offense. But Ms. Cavanaugh submits that 24 months incarceration along with supervised release and restitution is sufficient but not greater that necessary to achieve the objectives as defined in 18 U.S.C. § 3553(a). She is not a violent individual, nor she does not pose a threat to anyone or society. The sentence that the Government seeks is purely based on retribution/punishment, it serves no other purpose considering the maximum term of incarceration for Stolen Valor is one (1) year in prison. The term of incarceration that the Government is seeking is designated for violent offenders, career criminals, and unremorseful individuals. None of these adjectives apply to Ms. Cavanaugh.

### (v) The Need to Provide Restitution

Ms. Cavanaugh has agreed to the entry of a $294,000.00 forfeiture/restitution order, and fully intends to repay every single dollar. In an extraordinary show of good faith, Ms. Cavanaugh plans to pay off her restitution in an accelerated fashion by liquidating assets – particularly her

house, where the proceeds have already been committed to repay restitution. Her commitment is measurable given that, at sentencing, she plans to pay off approximately a third of the restitution amount and merits consideration at sentencing. Yet, a longer term of any BOP incarceration beyond 24 months will only serve to delay her ability to finish paying off the debt.

### (vi) Unwanted Disparity with Similar Offenders

A downward variance from the Guidelines sentence range would not create a disparity with similar offenders: it would, in fact, promote uniformity when compared to several highly relevant, similar offenders/sentences. Indeed, in 2018, courts across the country imposed a sentence on a defendant convicted of fraud/theft/embezzlement that varied from the Guidelines' range 34.8% of the time. *See* U.S.S.G., Statistical Information Packet Fiscal Year 2018, Table 10 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/1c18.pdf). Within the First Circuit, persons convicted of fraud/theft/embezzlement varied from the Guidelines' range 42.2% of the time. In other words, courts frequently sentence defendants outside the range recommended by the Guidelines.

In looking at cases within Rhode Island or the First Circuit that would be useful comparators with respect to "Stolen Valor", there are no cases on point with respect to "stolen valor". There is, however, a 2017 case of "Stolen Valor" within the Central District of Illinois[1], in which the defendant William R. Jones, a retired Lieutenant Colonel, falsely claimed that he served in the Southeast Asia or Republic of Vietnam ("RVN") theater of combat operations and received a Bronze Medal with V for Valor and a Purple Heart for RVN service.

The defendant, who had retired from the military in 2002, sought disability benefits based on claims that he was suffering from post-traumatic stress disorder attendant to combat service in the RVN. The defendant specifically claimed that he was assigned to Special Operations in Vietnam and that he was shot down in enemy territory but rescued by U.S. Marines three weeks later. After the VA denied his claim after checking service records and determining that he was never in the RVN, he submitted a false DD-214 to the VA in an attempt to corroborate his claim. His continued campaign for disability benefits resulted in the American Legion and public officials – including a letter dated 2008 from then-U.S. Senator Barack Obama stating that the defendant

---

[1] 1:16-cr-400039 US v. William R. Jones

9

was a RVN veteran – to petition the VA in support of the defendant based on his false representations. As a result of the false representations the defendant received $71,472.00 from the VA for combat-related disability.

It was later determined by the Government that the defendant entered service in Air National Guard in 1971 and that he served in various Reserve or National Guard components, but that he never served in any theater of combat operations, least of which, in the Southeast of Asia or the RVN. The defendant subsequently entered a plea of guilty to theft of government funds (maximum penalty of 10 years in prison) and making false statements (maximum penalty of 5 years in prison) about his military service to the U.S. Department of Veterans Affairs. The defendant was ultimately sentenced to 8 months incarceration on both counts that ran concurrently.

There are of course differences between the current case of Ms. Cavanaugh and that of Mr. Jones, including the charges that each defendant was indicted and convicted of. But there are significant similarities between the actions of William Jones and Ms. Cavanaugh, including false representations of combat service, the misuse of resources (i.e. American Legion) designed to assist Veterans, and the obtaining of funds via fraud. In the *Jones* case, the defendant was facing a total of fifteen (15) years of incarceration. Based on the totality of the circumstances, the Central District of Illinois determined that 8 months of incarceration was sufficient, but not greater than necessary to achieve the goals of sentencing. This case is a fair comparator of the *Jones* case. Accordingly, we submit that although a sentence of 24 months and a day of incarceration is higher than the *Jones* comparison, given the fraud loss amount in this case, a sentence of 24 months incarceration would promote uniformity and avoid disparate outcomes with similarly offenders.

## IV. CONCLUSION

We concede that this case elicits anger and passion unlike that is seen on a regular basis and that defrauding Veteran benefit programs and falsely claiming to have cancer is morally repugnant. However, we submit that Ms. Cavanaugh's case should take into consideration all the sentencing factors outlined by Congress not based solely on the emotion that her crimes elicit or the nature and characteristics of the offenses.

In this case, the purposes of sentencing are achieved by considering the totality of the circumstances. Ms. Cavanaugh is a non-violent first-time offender with a support system who

poses minimal risk of re-offending. Ms. Cavanaugh understands that jail is a certainty, and she understands that it is warranted. Respectfully however, there is little utility, from a practical perspective aside from vengeance, to have Ms. Cavanaugh serve a within guideline prison sentence.

Based on the foregoing, Ms. Cavanaugh respectfully requests that the Court vary from the Advisory guideline range and impose a sentence of 24 months and a day, followed by a term of supervised release and restitution. Such a sentence is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553(a).

Respectfully submitted on this 12th day of March 2023.

                                        Respectfully submitted,

                                        Sarah Cavanaugh,
                                        By her attorney

*s/Kensley R. Barrett*
KENSLEY R. BARRETT
Bar No. 8657
Marin & Barrett, Inc.
1000 Chapel View Blvd, Suite 260
Cranston, RI 02920
Phone: (401) 601.8646
Fax: (401) 679.0122
Email:kb@marinbarrettlaw.com

## CERTIFICATE OF SERVICE

I, do hereby certify that on March 12, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Ronald Gendron
    Assistant United States Attorney

Providence, Rhode Island 02903

<u>*s/Kensley R. Barrett*</u>
KENSLEY R. BARRETT
Bar No. 8657
Marin & Barrett, Inc.
1000 Chapel View Blvd, Suite 260
Cranston, RI 02920
Phone: (401) 601.8646
Fax: (401) 679.0122
Email:kb@marinbarrettlaw.com